May it please the Court. My name is Paul Alston. I represent GBBY Ewa Limited Partnership, the appellant in this case. We are here because in the foreclosure below, my clients took nothing as a result of the Bankruptcy Court and then the District Court allowing a default interest at 24% to run after the Interlocutory Decree of Foreclosure, which was entered in February 2010 until approximately seven months later when the sale had occurred and funds were distributed. The difference is substantial. Counsel, may I just ask liberally, isn't foreclosure an equitable remedy, which is the opposite of a money judgment? No, Your Honor. Foreclosure is indeed an equitable remedy, but it leads to a money judgment. Indeed, but don't the cases say that since it's an equitable, someone has to sell the property, the money has to come in. As I read the cases, they say the rate of interest stays at the foreclosure rate. And as a matter of state law, that certainly would be true. And indeed, under Hawaii law, the cases teach that in a foreclosure, it is possible to charge default interest and the Court will allow the entry of default or the awarding of default interest. The problem comes, Your Honor, when the federal court enters what is called a money judgment under 28 U.S.C. 1961, then as a matter of firm and consistent federal policy, whatever the state law may be prior to judgment, where state law controls the entry and the award of interest, federal law takes over and prescribes that only the rate set in 1961 is permitted. And neither the district court nor the bankruptcy court had the benefit of this court's December 2011 decision in the Ministry of Defense case. And there, this court basically described the requirements for determining what constitutes a money judgment. And it basically said there are only two things. One is a determination of who owes the money and who's entitled to it. And secondarily, how much is to be paid. And measured under that standard then, the February 10 order does exactly what's required to make it into a money judgment. And so in that respect, if it meets those two elements that are set forth in the Ministry of Defense case, there is no choice but then to apply 1961 instead of the equitable principles that would control as a matter of state law and as a matter of the principles underlying diversity, jurisdiction, and applying state law. Under Hawaii law, did finance factors have a legal right to collect? Yes, they did have a legal right to collect default interest prior to the entry of judgment. And so they had a right, there is no usury problem, there is no legal difficulty with them contracting for 24% interest. And certainly we don't dispute their right to have that interest up to the point when a quote money judgment has been entered. The question here is what constitutes that money judgment. And it's not only the decision in Ministry of Defense which came after all the proceedings below, but it's also dictated by this court's decision in Friend v. Kozludziak, I believe it is, which is a case involving an entitlement to attorney's fees. And in that case, this court held, following the many other circuits on point, that once an entitlement to attorney's fees has been determined, it doesn't matter then what the amount is, it doesn't matter when the exact amount is determined, the judgment or the order that determines the entitlement constitutes a money judgment under Section 1961, even though obviously at that point it can't be executed upon because no one knows how much there is to be collected. So that I submit that the underlying nature of the state claim does not affect the analysis under 1961 as to what constitutes a money judgment. There was a time when Section 1961 provided that state law would provide the interest rate post-federal judgment. Congress decided in its wisdom that as a matter of federal policy, it was important to have a uniform rule. And it does not matter under 1961 what the nature of the underlying claim was. It does not matter what the underlying state law may provide for up to the point of the entry of that judgment. What matters is when Congress, when the court enters what constitutes a money judgment, then federal law controls, period. Your basic authority for that statement is what case? The basic authority is the Ministry of Defense case and the Friend case and the language of 1961 itself. It does not distinguish in any respect between any particular kind of claim, equitable or legal, it doesn't matter. And it's clear when you read the February 2nd, February 10 order entered by the district court, which was in all respects a judgment in that it determined in accordance with Hawaii law a number of issues. Counsel there provided the amount to be paid to the penny. And he included in there the formula for the calculation of interest. Everything that needed to be decided with respect to how much finance factors was owed was set forth there. It would be perhaps a different case. And I say perhaps because the Friend case teaches that perhaps even the calculation of a dollar amount isn't necessary to constitute a money judgment. But once that amount was set forth in the order, then unquestionably it constitutes a money judgment. And that being so, then it doesn't matter what state law would apply, it doesn't matter what equitable principles would justify leading up to that point. From that point on, February 10th, then the federal interest rate is controlling. Now, our secondary argument in that respect is that even under Hawaii law, at least the interest rate on judgments, which is 10% instead of 24%, should kick in. For that proposition, we have cited the Schmidt case, which is instructive perhaps, but not binding, of course, because it's an unpublished decision. Also, I think that you can take guidance from the Kamaole Resort case, which the appellee takes great comfort in. Because in that case, in explaining why the judgment rate did not kick in, the justice who had written the Kamaole decision just a few days before, or a few weeks before, said that, and I'll make a quote from the decision, it said, And in Kamaole Resort, we very recently considered the applicability of the judgment rate statute to a mortgage foreclosure decree, which we held was not a judgment within the meaning of that statute. That decree ordered a sale, but did not adjudicate the amount of the indebtedness secured, did not direct the payment of money, and did not find an amount of money to be due from the defendant to the plaintiff. The February 10th order in this case does those things. It says to the penny that a multi-million dollar amount is owed, and it says in the conclusion of Law No. 5, and in the order portion of that document in paragraph 8, it says that the money will be distributed to finance factors up to the amount of its entire indebtedness. All that was missing in Kamaole Resort is in fact found in our case. And so I submit that under both 1961 and Hawaii law, the amount of the interest accruing after February 10th has to be reduced. Under federal law, it would reduce the amount by over $650,000. Under state law, it would reduce it by over $400,000. And in either event, some reduction has to be made. The third issue that's presented for denoble consideration by the court is, of course, the jurisdictional issue. It's one that we raise reluctantly because no one would like to see this entire foreclosure overturned and send the parties back to square one to start anew. But what about consent? How does that play into your jurisdictional argument? Were there some basis for federal jurisdiction of any kind, consent would doom us. We would not be making the argument in light of this court's decision in Bellingham on which the parties provided some supplemental briefing. The problem is that unlike Bellingham, where the matter was within the federal jurisdiction, this case has no jurisdictional pin other than the possibility of related to jurisdiction, which the Supreme Court in Stern v. Marshall and this court in Bellingham and in other decisions indicate can't be sustained. There's no diversity. If there's not bankruptcy jurisdiction, then there is no jurisdiction. What I don't understand, counsel, is that when you filed your counterclaim, in the bankruptcy court, you explicitly agreed the court had subject matter jurisdiction. What has changed? Believe me, Your Honor, I wish I had been prescient and had foreseen both Stern v. Marshall and this court's decision in Bellingham because we obviously would not have taken that position. But at the time, we understood that related to jurisdiction was much broader than it actually has turned out to be in light of this court's decisions. And in that regard, I would point the court particularly to NRAY, that's N-R-A-Y, which is cited in the supplemental materials we've provided the court. There, this court explained that in order for there to be related jurisdiction, there has to be, related to jurisdiction, excuse me, there has to be a, quote, close nexus between the matter that's dealt with in the post-confirmation proceedings and the affairs of the debtor or the administration of the plan of reorganization. And the court explains that where there is, at most, the possibility of some added distribution to the creditors, that is not enough to justify any federal jurisdiction. Here, that's, at most, what existed because there was some remote possibility that the creditors' trust, which grew out of the bankruptcy, might see some money. It didn't happen. But there is clearly no basis for any federal jurisdiction over these proceedings. And as I said, from a purely pragmatic standpoint, I wish I could pretend this issue didn't exist because I would like a decision on the money judgment to question. But I think that from a matter of our ethical responsibilities to the court, we need to at least raise it and surface it in light of the fact that there is no related to jurisdiction and no diversity jurisdiction and obviously no federal question jurisdiction. And that makes it unlike Bellingham and unlike any other case that we've been able to find where this issue has come up after the Supreme Court's decision in Stern v. Marshall. I see I have about a minute and 15 seconds left, and I'd like to reserve it. Thank you, Counsel. Good morning, Your Honors. May it please the Court. Cal Chip Chase for Appellee, Finance Factors Limited. Your Honors, I'll take up the jurisdictional point only because it's the last one raised. And to start with this, neither Stern nor Bellingham had anything to do with jurisdiction. They're consent cases. So they didn't change jurisdiction in this case or any other bankruptcy case. They didn't deal with jurisdiction. They dealt with consent in Article III cases. And so nothing changed, to Your Honors' point, from the answer or the counterclaim to today in terms of jurisdictional law. Picking up, too, on the discussion of Wray from this Court, really that case stands for two unremarkable propositions. The first is that the mere threat, the mere possibility that a State court might misinterpret or fail to apply the preclusive effect of a prior Federal order does not by itself convey subject matter jurisdiction. The second is that a broad retention jurisdiction provision in a plan over any rights arising from that plan does not by itself convey subject matter jurisdiction. That's as far as the case goes, and the appellate panel cases that follow Wray simply apply those two uncontroversial points to similar fact patterns. We have nothing like that here. And while this case was not presented with a challenge to subject matter jurisdiction in mind because it wasn't raised until post-briefing, I think I can safely relate the following facts. The case was brought by a creditor's trust to enforce a settlement agreement over which the Hawaii Bankruptcy Court expressly retained enforcement jurisdiction in its order of dismissal. The debtor is Summit Securities. The case is not closed. It's ongoing. Summit Securities had previously removed to Hawaii Bankruptcy Court a State court action. That case settled, and in the settlement agreement, the defendants agreed to pay Summit Securities certain sums. They also agreed to obtain new financing, which is where finance factors came in, and Summit Securities, for its part, agreed to subordinate its interests to the new lender. That agreement provided that if defendants did not pay the sums, the Hawaii Bankruptcy Court would issue an order of foreclosure, and it provided the court would retain jurisdiction to enforce it. The court, as I said, expressly incorporated that agreement into its order of dismissal. After that incorporation, in accord with the settlement agreement, the defendants obtained new financing from finance factors, and in accord with that settlement agreement, defendants or rather Summit Securities at the time and finance factors entered into an intercreditor agreement under which finance factors committed itself to certain terms in the settlement agreement, and Summit Securities agreed to take the second mortgage position, giving finance factors the first and third. The Bankruptcy Court approved that, and as I said, it was stated in the order of dismissal. Subsequently, when the amended plan was approved, it created Summit Creditors' Trust and assigned to Summit Creditors' Trust the rights in that settlement agreement and the intercreditor agreement. When the defendants failed to pay Summit Creditors' Trust as required by the settlement agreement, Summit Creditors' Trust reopened the action in Federal Bankruptcy Court here and sought, count one, breach of the agreement. Count two, for foreclosure, the specific remedy called for in the settlement agreement and sought marshalling of assets. Summit Creditors named finance factors because finance factors was a party to the intercreditor agreement and held the first and third mortgages. Summit Creditors later removed to Bankruptcy Court a later filed state court action dealing with exactly the same property, also naming Summit Creditors, and dealing with exactly the same finance factors mortgage which was secured by multiple properties. Secured by the property that Summit Creditors had an interest in and by the property that Mr. Alston's client, GGBY, has an interest in. No party objected to removal. And because those cases could not be resolved separately, you could not decide the marshalling claim independent of all the assets that finance factors were secured by. You could not have different deficiency judgments on exactly the same finance factors. Note, the cases were consolidated and GGBY did not object to consolidation. On those facts, this Court's and the Supreme Court's precedent and direction for statutory jurisdiction, whether related to or rising in, is met. Independently, the principles of ancillary jurisdiction articulated in Cochran and by this Court and other courts since satisfy the jurisdictional requirements. And that's why that no party had ever challenged jurisdiction until post-briefing when this Court's opinion in Bellingham Insurance disposed of GGBY's authority argument. Bellingham Insurance teaches that the right to a final decision by an Article III judge is a personal one. And so it can be waived. And it can be waived by an express waiver, by failing to timely raise it, or by conduct in the litigation that is inconsistent with the assertion of the right. Here we have all three. GGBY didn't raise authority until appeal, too late under Bellingham. GGBY brought a counterclaim, or a cross-claim rather, and sought foreclosure of its interests invoking the bankruptcy judge's authority. And in its answer, GGBY expressly consented to the entry of final judgment by the bankruptcy judge. So the bankruptcy judge did exactly what GGBY said it could do, enter final judgment. And GGBY can't complain just because it doesn't like the result. It brings me to the merits of this appeal, the substance of it. GGBY's argument boils down to this. The foreclosure judgment as to finance factors alone, not as to GGBY, cut off the running of pre-judgment interest and triggered the running of post-judgment interest. That argument falls apart in the face of three points, and the first one is factual. GGBY and finance factors took foreclosure at exactly the same time, under exactly the same document, and under exactly the same terms. Yet GGBY sought and received pre-judgment interest at its note rate all the way until the entry of a deficiency judgment. GGBY has tried to distinguish and try it again today, the parties based on a finding supposedly in the judgment as to finance factors indebtedness and entitlement to attorney's fees. With respect, that is a misunderstanding of the record. The foreclosure judgment has no such finding. The foreclosure judgment merely awards foreclosure. The separate foreclosure decree does state that finance factors is owed a sum plus unstated attorney's fees and interest. The same decree states that GGBY alleges it's entitled to or that it is owed a specific amount of principal and interest plus interest and attorney's fees. Those findings merely support the entry of default, which is a predicate to foreclosure. They had no effect on the relief awarded by the foreclosure judgment. Both parties took foreclosure, and they had no prospective effect in the case. We can see that from the confirmation order. After the sales motions to confirm, in the confirmation order, the bankruptcy judge denied finance factors' request for attorney's fees, denied finance factors' request for a deficiency judgment, because the court determined that issues of fact remained with respect to a third property securing the same note. So the court refused to enter those orders. And so through the confirmation order, finance factors still had no determination of entitlement to fees, still had no money judgment, and still had nothing it could execute and collect upon to recover anything owed to it. What do you do with the fact that in the foreclosure action, it was precisely specified the amount finance factors owed? Well, it's exactly that, Your Honor. The foreclosure judgment did not do that. The foreclosure judgment only awarded foreclosure. The decree repeated the amount and repeated the amount with the preface allegation as to GGBY solely to establish default. But once default is established, it has no effect on the remedy. The remedy remained only foreclosure, and that judgment didn't determine anything. And as I said, the subsequent confirmation order specifically found that finance factors was not yet entitled to a deficiency judgment, was not yet entitled to attorney's fees, because issues of fact remained. I contrast that with GGBY in the confirmation order. In that confirmation order, the court found that GGBY was owed a specific sum plus, quote, any and all of its reasonable attorney's fees. Despite those findings, the same ones that GGBY wrongly attributes meaning to with respect to finance factors, GGBY subsequently sought and received interest at its note rate all the way through the entry of the deficiency judgment. So the distinction that GGBY has tried to craft is contrived. It does not exist. Both parties took foreclosure in the foreclosure judgment. And as a matter of Hawaii law, that's all they could take, which brings me to my second point. Foreclosure is a state remedy. Prejudgment interest is a state remedy. Those things are governed by state law. On point, Kamaole teaches us that a foreclosure judgment does not award money. It only awards foreclosure. And for that reason, because there's no sum, because nothing is executable, prejudgment interest continues. And postjudgment interest can't run because there's nothing to run it on. Your opposing counsel said that Hawaii law is irrelevant at this point because of 1961. What is your response? With respect to counsel, I disagree that it's irrelevant. What we are at is the intersection of state and federal law. State law controls foreclosure. It's a state remedy. State law controls prejudgment interest. It's a state remedy. Federal law controls postjudgment interest. And so what we have to look at is whether the judgment that was entered as a matter of Hawaii law, after all it's foreclosure, is the kind of judgment that does anything other than award foreclosure. Hawaii law says it does not. And even if we look at the unpublished decision they cite in Realty Finance, we get to that same end. In Realty Finance, the trial court specifically found and ordered that the plaintiff was entitled to after entry of the foreclosure judgment. And that decision was not disturbed on appeal. Instead, all the Hawaii Supreme Court did in Realty Finance is this, that the plaintiff there had sought and received a judgment for foreclosure, had subsequently assigned the note and mortgage to a third party. That third party had collected from the debtors, but had failed to pay the plaintiff. The plaintiff revoked the assignment and sought a deficiency judgment. And the debtor said, well, we paid your assignee. Credit us that amount. And the plaintiff refused to agree that that was appropriate. On appeal, the court simply invoked the practical idea of merger to explain there's one debt. They don't have to pay twice to redeem the same obligation. The court wasn't making law. That's why it left it unpublished. And the case is and remains unscindable in any Hawaii court today. But as I said, even if we looked at it, on this issue, prejudgment interest ran through the entry of foreclosure judgment. And that was not disturbed on appeal. You asked about federal law. And so when we look at Section 1961 and what it applies to, it applies to money judgments. The Supreme Court in Kaiser Aluminum explained that that requirement does not allow interest to run from a verdict. However specific, specific amounts, specific parties, you owe it. It doesn't matter because it's not a judgment. This court in Dishman and then Ministry of Defense, which was brought up today, explained that holding and the standard in this way. It means a final appealable order. And then quoting from Ministry of Defense, that contains a, quote, definite and certain designation of the amount owed. That's what a money judgment is. And GGBY does not explain how a foreclosure judgment, which as a matter of state law only awards foreclosure and as a matter of our facts only awarded foreclosure, could contain a definite and certain designation of the amount owed. Instead, counsel has brought up contextually specific exceptions to those rules. The one from Friend in attorney's fees came up today. The attorney's fees rule works like this. Where there is, the case is over. Judgment's been entered. A settlement has been reached. Whatever it is, the case is done. All that's left is to determine attorney's fees. And in that specific context, interest will run from the determination of entitlement to fees, even if the amount to fees has not been conclusively resolved. Nowhere is that rule applied to affect the running of interest on any other sum, on contract damages or whatever other damages may have been used or found. And nowhere is that rule used to cut off pre-judgment interest that may be accruing to the benefit of the creditor. The other exceptions deal with judgments that are modified on appeal or is in the Gurney case judgments that say cut specific checks and the defendant tries to say, well, you told me to cut specific checks. That's not a payment of money. The courts reject those. But they reject them with this explanation. Section 1961 was designed to operate for the benefit of the creditor. And so this court in American Telegraph, faced with two possible judgments that could have pegged post-judgment interest from, picked the later one expressly in part because the plaintiff in that case was accruing more interest as a matter of state law than it would accrue as a matter of federal law. The court recognized that's relevant because we're trying to protect the injured party, the plaintiff in that case. And so we will run post-judgment at a lower rate from the later judgment. GGBY's argument turns those principles on their head and would use the post-judgment rule to cut off interest accruing for the benefit of the creditor. Now, counsel started the argument today by saying his client took nothing. And I suppose that's true, but that's exactly the deal his client cut. His client came in as the second mortgage position, knowing that finance factors held the first mortgage position. Finance factors and GGBY entered into a term sheet, and the district court's order at Record 44 and 45 talks about that term sheet. In the term sheet, GGBY expressly subordinated or recognized that its interests were subordinate to finance factors. So what GGBY is trying to do here today is cut a better deal for itself than it did at the business table. And what it's trying to do here today is apply a different rule for finance factors than it applied to itself in its own case. The law doesn't support those distinctions. The bankruptcy court was right. The district court was right. Their judgment should be affirmed. Thank you, counsel. Thank you. Three points very briefly. The concept of consent that my proposing counsel talks about is consent between having the matter heard by a bankruptcy judge or having it heard by an Article III judge. The idea of consent never comes into play when there is no federal jurisdiction to begin with, as there was not in this case. Secondly, he would have you believe that the definition of money judgment under Section 1961 turns on particular principles of federal law, turns on questions whether the underlying cause of action is equitable or legal or something else under state law. Congress created a uniform rule for a reason, and it cannot be that the definition of money judgment changes from case to case to case depending on state law. It cannot be that the interest rate after the entry of a money judgment changes depending on the nature of the underlying claim. The Hirata case is interesting because it focuses on a decree of foreclosure entered in 1966, and the court in that case said the judgment rate, not the contract rate, applied from 1966 to 1973. We're not trying to cut a better deal. We just want the law applied properly. Thank you. Thank you very much, counsel. I will argue by both sides, and we really appreciate it. The case of GGBYA Limited Partnership v. Finance Factors is submitted.
judges: Farris, Nelson, Nguyen